No. 23-1989

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

John Paul Beaudoin, Sr.,
*Plaintiff - Appellant,*


v.


CHARLES D. BAKER, JR. individually as Governor of the Commonwealth of
Massachusetts; MAURA T. HEALEY, in her Official Capacity as Governor of the
Commonwealth of Massachusetts; MARGARET R. COOKE, individually and in
her Official Capacity as Commissioner of the Department of Public Health of the
Commonwealth of Massachusetts; MINDY HULL, individually and in her Official
Capacity as Chief Medical Examiner of the Commonwealth of Massachusetts;
JANICE Y. GRIVETTI, individually and in her Official Capacity as Medical
Examiner of the Commonwealth of Massachusetts; MICHELE N. MATTHEWS,
individually and in her Official Capacity as Medical Examiner of the
Commonwealth of Massachusetts; ROBERT M. WELTON, individually and in her
Official Capacity as Medical Examiner of the Commonwealth of Massachusetts;
JULIE HULL, individually and in her Official Capacity as Medical Examiner of
the Commonwealth of Massachusetts,
*Defendants - Appellees.*


On Appeal from the United States District Court
for the District of Massachusetts
No. 1:22-cv-11356-NMG
Hon. Nathaniel M. Gorton

_____

## APPELLANT'S OPENING BRIEF

_____

John Paul Beaudoin, Sr. (Pro se)
17 Fairview Road
Medfield, Massachusetts 01052
508-277-7276
johnbeaudoinsr@gmail.com

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    Three prongs of *Lujan*

      A. Injury in fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B. Traceability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C. Redressability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.   Iqbal's revenge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.  Right to petition the government for redress of grievances . . . . . . . . . . . . . 23

IV.  Chancery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)

**Statutes**

First Amendment of the United States Constitution

Article III Section 2 of the United States Constitution

# INTRODUCTION

The plaintiff brought this entirely equitable action against the defendants because the plaintiff was deprived of the right to a legal education due to his refusal to show proof of covid "vaccination." The law school requiring covid "vaccination" stated that they enacted the "vaccine" mandate because of the number of covid deaths claimed by the defendants and because the "vaccine" would somehow make everyone safe if everyone was injected with it as stated by the defendants.

The plaintiff received and analyzed nearly five hundred thousand (~500,000) un-redacted death records from the Commonwealth of Massachusetts. The plaintiff determined that numerous death records are false writings. The defendants have not corrected the false writings even after receiving notice derived from this lawsuit in September 2022. The defendants massively overcounted covid deaths through fraud on public records and hid covid "vaccine"- caused deaths from the public by intentional omission of the true causes of death. Since the cover-up of the "vaccine"- caused deaths, several thousand more people in Massachusetts died as a result of covid "vaccination."

The law school that unenrolled the plaintiff and other law schools to which the plaintiff was interested in applying stated publicly that the reasons for the mandates are the covid death counts and stated that the "vaccine" is "safe and

effective," both of which are the responsibility of the defendants and both of which are false statements.

No reasonable person would conclude that law schools would have enacted "vaccine" mandates if they knew the TRUTH documented from the Commonwealth's own official records in 123 pages in EXHBIT F of this case. But for the fraudulent misrepresentations put forth by the defendants, law schools would not have enacted mandates. There is no reasonable doubt of traceability, a standard far beyond what is necessary to confer standing.

The plaintiff has another case in state court for a contract breach against the law school. That is a separate matter.  The matter at hand is narrow and specific in order to stop the injury. The requested relief is to enjoin the defendants to publicly admit the TRUTH regarding the official records of Massachusetts. Tell the TRUTH to the people is all that is really necessary.

No reasonable person would believe that law schools would not immediately drop "vaccine" mandates if they were told the TRUTH that deaths caused by covid "vaccination" were labeled as "covid" deaths, that accidental deaths from fentanyl overdose, blunt force trauma to the head, blunt force trauma to the torso, and other hundreds of accidental deaths were labeled "covid" deaths, that the CARES Act is a behavior modification device that, through large financial incentives, changed the behavior of doctors to ventilate people who had oxygen saturation in the nineties percent. The massive fraud on The People is also a massive murder of The People.

And this court and the prior court may misuse and abuse "standing doctrine" to flick this case away, but they cannot flick away their own and their family members' heart attacks, strokes, turbo dementia, turbo cancers, acute renal failures, aortic dissections, and many other "vaccine"- caused injury and death.

There is no doubt whatsoever that if the law schools were told the TRUTH by the defendants, then the law schools would immediately end covid "vaccine" mandates.

Let's stop pretending that *Iqbal's Revenge* has not killed a million people in the United States in the past four (4) years and that it was enabled by the courts' misuse of "standing doctrine" case law.

## JURISDICTIONAL STATEMENT

The action arises under the United States Constitution, Amendment I right to petition a Court for a redress of grievances and under 42 U.S.C. § 1983 Civil action for deprivation of rights.

This Court has jurisdiction over the plaintiff's appeal from the final decision of the United States District Court for the District or Massachusetts under 28 U.S.C. § 1291.

Judgment was entered on October 27, 2023. This appeal is from a final judgment that disposed of all of Petitioner's claims.

## ISSUES PRESENTED

Whether the plaintiff has standing to sue the defendants, whose fraud caused "vaccine" mandates from law schools, in order to enjoin them to publicly correct their fraudulent statements thereby putting the law schools in a position to be sued by all the "vaccine" injured and dead resulting from the mandates, if they do not cancel the mandates.

Whether the plaintiff has an injury-in-fact.

Whether the plaintiff's injury can be "fairly" traced to the conduct of the defendants.

Whether the plaintiff's request for equitable relief, if ordered by the court, would redress the injury, *ergo*, cause the schools to drop the mandates.

## STATEMENT OF THE CASE

The plaintiff, John Paul Beaudoin, Sr., is a systems engineer and has an MBA in Management.

The plaintiff investigated public health data put out to The People by the defendants and found massive amounts of fraud. The plaintiff further investigated by interviewing an agent from within a state organization and also correlated other databases such as the Vaccine Adverse Event Reporting System (VAERS) against the Commonwealth's databases. The plaintiff's irrefutable evidence has been shown to millions of people around the world and several thousand doctors and

scientists. No one has refuted the facts evinced by the plaintiff, whose two (2) publications will ship to the public within a few weeks.

The plaintiff sued the defendants in August 2022, with all defendants served by September 9, 2023. The District Court dismissed the suit in equity pursuant to Fed. R. Civ. P. 12.(b)(6).

## SUMMARY OF THE ARGUMENT

The District Court found that the plaintiff lacked standing in stating that the plaintiff being barred from law schools by a "vaccine" mandate is a "generalized grievance." The District Court also stated that it was "doubtful" that the plaintiff's injury could be considered "concrete and particularized." Further, the District Court stated that the plaintiff's injury would doubtfully be deemed "actual or imminent."

In addition to claiming that there is no injury-in-fact to the plaintiff, the District Court also stated that the plaintiff's claims of fraudulent conduct by the defendants and their agents was "nothing more than a bare hypothesis that does not demonstrate that defendants' conduct caused any law school to act."

Lastly, the District Court also stated that the "plaintiff's alleged loss of his right to a legal education would in no way be redressed by a favorable decision."

The District Court's dismissal appears to be a cookie cutter dismissal citing favorite cases of "standing doctrine" to flick away some *pro se* litigant, while never having read the complaint or EXHIBIT F of the complaint. The District Court

made errors of fact and errors of law in the dismissal and stole the most

foundational right in the Constitution from the plaintiff.

For example, The District Court, despite law schools expressly stating that

they enacted mandates due directly to the covid data provided by defendants, stated

that the law school "vaccine" mandates that injured the plaintiff cannot be traced to

the conduct of the defendants. The traceability prong of *Lujan* is satisfied by the

express statements of the third party law schools.

The plaintiff argues that "standing doctrine" has been overused, especially in

this case, that the dismissal violates the plaintiff's foundational right to petition the

government for redress of grievances, that he has an obvious and concrete and

actual and imminent and particular grievance that is in no way "generalized," that

the "plausible" standard is a subjective farce on The People, that judicial economy

is the true reason behind "standing doctrine" and that the behavioral economics

intersection with law is broken under *Twiqbal*, and that courts nowadays do not

seem to understand the value of chancery in the context cases such as the present

one. This lack of understanding has presented itself in one million (1,000,000)

Americans dying in the last four (4) years due to the broken court system, which is

fundamental to the present case.

**ARGUMENT**

**I.    Three prongs of Lujan**

**A.    Injury in Fact**

## *Generalized grievance insufficient to confer Art III standing*

The District Court found the plaintiff's claimed injury to be a "generalized grievance" insufficient to confer "standing" per a seminal case, *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), that threw a lasso around many cases before it and reduced "standing" to a three-prong test, the first of which is the requirement of an injury-in-fact on the face of the complaint.

The error made by the District Court regarding injury is calling the plaintiff's claimed injury, "generalized" and stating that *Lujan* uses further subjective terms that allows enormous leeway to clerks and judges to dismiss cases they simply do not like nor want to be part of. The District Court, in taking facts from the defense as true, summarized the plaintiff's complained injury using the phrase, "like all citizens of the Commonwealth has been injured" as if the plaintiff does not have an injury if all citizens have the same injury. This does not even make sense, let alone meet any semblance of analysis against the three prongs of *Lujan*.

## *Concrete and particularized*

The first test of an injury from *Lujan* is "concrete and particularized." The plaintiff was very particular in his claimed injury. The District Court stated that it is "doubtful" that the plaintiff can show the injury meets this standard. By what method? No one can show anything to certainty when the standard itself is so abstract that it leaves judges in positions to whimsically

flick cases away if they merely do not like them. How about this method? Ask any reasonable person if the plaintiff has the same right to attend law school as any other person given the entrance qualifications are met. Ask if that right was violated due to covid "vaccine" mandates. It is cut and dry. The plaintiff was deprived of a law education, lost ~$28,000 and year of his life and his last ten to twenty years on this planet were changed forever. This did happen. There is no doubt. Does that rise to the Court's definition of "concrete and particularized?" It is not as if the plaintiff thought some day he might want to travel to Europe to see an endangered Nile crocodile. The disparity between *Lujan* and the present case regarding injury in fact is stark. To see how far courts have allowed the scope creep of "standing doctrine" to deprive citizens of their First Amendment right to petition the government for redress of grievances is sickening to anyone outside the field of legal practice. Those in the field of legal practice are the frog in the pot not seeing what has happened because it has been so gradual over the past two decades. The plaintiff certainly has a "concrete and particularized" injury in fact. The prose in the dismissal is embarrassing. I shouldn't even have to address this.

### *Actual or imminent*

The court next erred in stating that it is also doubtful that the plaintiff can show an "actual or imminent injury." The plaintiff *actually* was unenrolled from law school without prior notice or any ruling on his

tendered religious exemption. The school just broke off all communication and would not allow the plaintiff on campus unless he was covid "vaccinated." The plaintiff lost significant money, a year of his life, could not even transfer the credits from that law school, and would not be able to enter another law school due to their covid "vaccine" mandates.

To say there is no "actual" injury is preposterous on its face.

The injury was caused by a third party, yet third party doctrine does account for this and the causal chain is only two (2) steps, which blows the "attenuation" defense out of the water. All the stock case law prose you can throw at this case cannot change the fact that an injury did indeed occur.

*Conjectural or hypothetical*

Since "actual" razes "hypothetical," there is no point is writing the same thing as above. The plaintiff's injury is NOT hypothetical. It's real and tangible in the forms of pecuniary loss, time loss, and deprivation of rights.

**B.    Traceability**

The District Court must not have read the complaint. The District Court wrote, "While plaintiff claims these mandates were the result of fraud and coercion by the defendants, this allegation 'is nothing more than a bare hypothesis' that does not demonstrate that defendants' conduct caused any law school to act," taken, in part from *Katz v. Pershing, LLC*, 672 F.3d 64, 77 (1st Cir. 2012). Since I am not an attorney, I find it odd that phrases are

taken from other cases gratuitously to create some patchwork semblance of rationale. This selected statement by the District Court oozes bias and is inappropriate in context.

Traceability is doubtless in the present case. The law schools themselves say quite openly and publicly that they enacted covid "vaccine" mandates because the defendants (the Commonwealth of Massachusetts and the Department of Public Health) claimed massive numbers of deaths from covid *per se* and also claimed that covid "vaccines" are "safe and effective," both of which are outright prevarications as shown in factual evidence on the face of the complaint by the plaintiff.

By the express statements of law schools, including the one that kicked out the plaintiff and kept his money and took a year of his life, the injury is not just "fairly" traceable to the defendants' conduct, the injury is expressly, actually, and unequivocally traceable to the defendant's conduct. There is no wiggle room of subjective bias of the court here.

## C.    Redressability

In order to satisfy this third prong of *Lujan*, the plaintiff must meet a minimum standard that if he were to win a favorable decision from the Court, that the Court has the power and ability to redress the injury in fact. In the present case, given that all relief requested is in equity, the stated relief need not be one of the ways that the Court may redress the injury to

the plaintiff. In equity, the Court has leeway to enjoin the defendants to perform or stop performing some act that will redress the plaintiff's injury regardless of whether it was requested as part of the plaintiff's complaint. The only question in this prong is whether the court has power to redress the injury given a favorable decision for the plaintiff. However, the plaintiff contends still that the requested relief will redress the ongoing injury.

There are words used such as "likely" and "speculative" and others associated with the ability of the court to redress the injury. All those words lie on the same spectrum of infinite possibilities minus two end points being the absolutes of *yes* or *no*. Anything not absolutely *yes* or absolutely *no* is speculative. Something to a degree of 99.99999% probable is speculative as is something to a degree of 0.000001%. While this seems ridiculous to point out, the plaintiff feels that the words used in "standing doctrine" are more ridiculous. Oh, but the Supreme Court actually wrote, "merely speculative." Oooh. That changes everything. Maybe merely means the "unlikely" half of speculative instead of the "likely" half of speculative? This word play with the lives of citizens to say whether they can beg the courts for access to redress grievances is and will degrade civil society to a point where justice will be had in the streets because it is not available in the courts. You already see it across America now in many cities.

All that the court should consider for redressability is whether a reasonable person believes, or a reasonable District Court judge believes, that law schools would immediately cancel covid "vaccine" mandates if the defendants were enjoined to publicly tell the TRUTH about covid deaths and "vaccine" deaths. The District Court apparently did not read the plaintiff's complaint or EXHIBIT F. In EXHIBIT F and parts of the plaintiff's complaint are concrete and particularized deaths of Massachusetts children and adults resulting from covid "vaccination" and which were labeled "covid" deaths by the defendants and their agents. The massive fraud on The People of Massachusetts caused the loss of more than four thousand (>4,000) Massachusetts souls. Only one example will be stated here. Brianna McCarthy was only 30-years-old. Methuen High School, where she taught English, announced in March 2021 in the *Lawrence Eagle Tribune* that Methuen High School teachers would be getting their covid "vaccines." Brianna got her Moderna shot. She came down with a headache so severe that she went to the hospital twice and they sent her home with a headache, until she did not recognize her sister a few days later and was brought to the hospital by her family. The hospital staff tried to save Brianna. They cut a hole in her head to relieve the pressure, which did not work because the clots were all through her head. She experienced a seizure, paralysis, and there was no brain activity after a few days. After two weeks of this devastating

family ordeal, Brianna's parents agreed to end life support. Six (6) doctors from Harvard Medical College and Beth Israel Deaconess Medical Center wrote a Brief Report about Brianna's case entitled *Fatal Post COVID mRNA-Vaccine Associated Cerebral Ischemia.* McMillan, N., Rosenberg, H. J., Anderson, M. P., Pal, P., Stephenson, K., & Fehnel, C. R. (2023). Fatal Post COVID mRNA-Vaccine Associated Cerebral Ischemia. *The Neurohospitalist*, 13(2), 156–158. https://doi.org/ 10.1177/19418744221136898

The report about Brianna states in almost every paragraph that the Moderna "vaccine" killed her by stroke. The defendants or their agents stated on Brianna's official state death record that she died from "covid" as a root cause, or "underlying cause of death" as it is known by the Centers for Disease Control and Prevention (CDC). The brief report states that Brianna had covid "asymptomatically" three (3) months earlier, though family members put it more toward four and a half (4.5) months earlier.

To be clear, Brianna reacted in hours and died in days from an ischemic stroke caused by the Moderna "vaccine." She had covid months earlier. The death record states she died from covid and does not mention the "vaccine."

Brian McCarthy, Brianna's father, is devastated and has been trying to get the death record corrected to reflect the true cause of death, but the

Commonwealth agents are stonewalling him and have not changed it in two years.

The plaintiff's EXHIBIT F is 123 pages of official records from Massachusetts that detail a massive FRAUD on The People of The World. Massachusetts, New York, and New Jersey ran away from the world in purported covid deaths in the entire first year of covid. When the world looked at total USA covid deaths, they were looking at these three states. Massachusetts has 600 pharmaceutical eco-system companies with $47Billion in venture capital financing, ten companies that achieve more than $1Billion in annual revenue, fifty companies that achieve more than $100Million in annual revenue, Moderna's headquarters, research and development, and manufacturing are in Massachusetts, Pfizer's divisional headquarters, R&D, and manufacturing for the mRNA gene therapy product called a "vaccine" are in Massachusetts. No wonder there is fraud.

If the District Court were to enjoin the defendants to publicly show the TRUTH of how many college-aged young adults died from pulmonary emboli (clots in lungs), myocarditis (like Abby 20yo), stroke (like Brianna 30yo, Diane 62yo, Eden 17yo, and Amaya 12yo), and how many adults died from gastrointestinal ischemia and hemorrhage, and turbo cancers and turbo dementia after covid "vaccination," then it is "likely" and more than "merely speculative" that the law schools would drop the "vaccine" mandates. Any

reasonable person knows the schools would cancel the mandates. The only

remaining question is whether the Court is reasonable.

## II.    Iqbal's Revenge

While *Lujan* is a reasonable lasso around standing doctrine, though

the prongs' phrases are left too open to subjective biases of any given court,

the key language from *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "plausible on

its face," leaves the barn door open for all kinds of biases to escape and

breed into chimeric violations of the foundational First Amendment right to

petition for redress of grievances.

The *Iqbal* case has been cited 256,079 times according the Google

Scholar Case Law (https://scholar.google.com/scholar_case?

case=16725752296468120395&q=ashcroft+v+iqbal&hl=en&as_sdt=40000

003). Javaid Iqbal was arrested and held in a detention center in Brooklyn,

NY after the 9/11 attacks. He is alleged to have been beaten while in

detention. Iqbal was then deported back to Pakistan and subsequently sued

the Attorney General of the United States, John Aschcroft, under *respondeat*

*superior*. While the 5-4 decision to deny Iqbal "standing" was probably the

right decision due to attenuation, that is not how it has been used by more

than a quarter million motions to dismiss. The "plausible on its face"

language is so abstract that it leaves the door open for any judge in the

United States in any court to whimsically flick a plaintiff out of court in violation of the plaintiff's most fundamental right to petition for redress.

The present case is just such a case that has ended up in the trash heap at the bottom of the slippery slope due to the scope creep of "standing doctrine."

*Judicial economy*

The pragmatism of "standing doctrine" is not lost on the plaintiff. The courts are overloaded and need to flick away many cases in order to function for the "real" cases and controversies brought before them. However, the appellate courts of the land seem to need a lesson in judicial economy that is at the intersection of law and economics, especially in the area of behavioral economics. What has occurred since *Iqbal* has been expected human behavior that results in an inverted Pareto efficiency where any change to the system would make it better. *Id est*, the system is now about as bad as it can get because of the normal human behavior of judges as they are mere human beings.

The rational choice theory or rationality principle of economics is that people act in their own self-interest. Relative to "standing doctrine," given power, many people will take it. Given an escape route from a difficult or nonstandard system, many people will take it.

The *Iqbal* decision gives false license to all judges to escape cases and use power to take rights from The People by dismissing cases in citing probably the most abstract and useless language ever used to defile natural rights and individual liberties.

Over time, through the Pareto reverberations toward a stable, but undesirable (in this case) outcome, judges, like the one in the present case, have used *Iqbal* more and more over time as a means by which they can dispense with cases from annoying *pro s*e litigants who dare to sue a state or federal government. Such dismissals, using such abstract terms and subjective biases, became custom and practice of judges in a predictable rationality principled way. The behavior is a result of the input variable of *Iqbal*'s abstract and nearly meaningless prose. *Iqbal* was the right decision and should have been a one-off case, but *Iqbal* became a quarter million headed hydra with a bite that steals all rights of the citizens.

The behavior that flows from such an abstract, open-ended case is that of lethargy and expediency for the personal will and whim of any judge. What now seems normal to any law clerk or judge would have been appalling thirty (30) years ago. The frog in the pot are the rights of citizens boiling away in an opaque soup of *Iqbal* prose.

What is *Iqbal*'s revenge? Iqbal is probably sitting in Pakistan not even realizing that his legal feats killed one million (1,000,000) Americans,

injured and maimed tens, if not hundreds of millions, and stole the rights of all U.S. citizens. The rampant fraud that is the covid era brought many cases to courts. Most of those cases had merit. Most of those cases were dismissed on "standing" using *Iqbal* as case law. Here is an excerpt from *The Real CdC*.

> In the fiscal year ending March 31, 2021, U.S. District Court (federal court) filings totaled more than 500,000 cases of which more than 460,000 were civil cases. Civil cases were up 39% year over year, which is ~130,000 civil cases more than the year before.
> Beaudoin, J. (February 2024). *The Real CdC*. Summa Logica LLC.

In dismissing so many cases because the court feels overloaded and the biases constrict the judges' decisions even further, the rights of the litigants are trampled. Judicial economy, while a pragmatic excuse, when implemented worsens the system.

- As more cases are dismissed without final resolution in law, more cases involving the same legal theories and subject matter are brought because there is no settled law on these legal theories

- As "standing doctrine" is successful, every lawyer learns to use *Iqbal* and a motion to dismiss on standing. The entire market economy of litigation is formed around a pattern of motions to

dismiss based on 12(b)(1) or 12(b)(6). The system settles into a

least efficient state as it is now

- Courts fall into a pattern of behavior of lethargy and purported

judicial economy to flick cases out of court on a daily basis

The number of deaths earlier attributed to *Iqbal* stem from the

plaintiff's analysis of more than one million un-redacted death certificates

from multiple states. While 2020 was a year of respiratory excess deaths in

ages averaging 81-years-old and during cold and flu season, the year of the

covid "vaccine," 2021 shows a shift in the excess deaths to clotting and

bleeding causes sixteen (16) years younger on average and not seasonal, but

rather all year long as "vaccine" uptake occurred. There are more than 3,000

excess cardiac arrest deaths in 2021 and 2022 in Massachusetts alone, about

500 excess pulmonary embolism deaths in that period, about 400 cardiac

arrhythmia deaths in that period, more strokes, GI hemorrhages, and others

such as a growing lymph node cancer death rate more than 400% of normal

in 2023. In addition to the "vaccine" caused deaths are acute renal failure

deaths due to CDC recommended hospital protocols. Doctors now do what

the central authority tells them to do without thinking for themselves. This

resulted in hundreds of thousands of deaths. The plaintiff shows in *The Real*

*CdC* and in *THE CDC MEMORANDUM* how bad the fraud and murder is

from the government during the covid era. Beaudoin, J. (February 2024).

*THE CDC MEMORANDUM*. Summa Logica LLC.

Yes, more than one million people in the United States were murdered by government-recommended medicaments and protocols. And it all could have been avoided by simply hearing cases in early 2020 and through 2021. By not hearing cases and by dismissing them on "standing," a million people are dead and orders of magnitude more than that are maimed. If one clerk would have read a few pages of EXHIBIT F of the complaint in this case, children who died with clots in their hearts and brains would be alive today.

Judicial economy is a farce stated by people in law who know nothing of economic systems theory and, thus, make the overall system worse with abstract prose. The Supreme Court of the United States must look at "standing doctrine" and define it better in the understanding of the behavior that flows from the words handed down to the lower courts. Civil society is in shambles because of the behavior of judges that flows from *Iqbal*.

## III.   Right to petition the government for redress of grievances

On the scales of justice in the present case sit two (2) competing Constitutional ideas. On one scale sits the First Amendment, specifically, "Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances." On the other scale sits Article III § 2, specifically, "The judicial Power shall extend to all Cases, in

Law and Equity, arising under this Constitution, the Laws of the United States …"

The first scale holds what has been called the foundational right earlier in this brief. All other rights including speech, religion, and assembly cannot be secured without the right to petition the government, and the courts, for redress of grievances. If I put my foot in your mouth, you do not have free speech unless there is a court system that is the foundation of civil society. If the courts fail The People and refuse to hear cases based on the excuse of "standing," then justice is not had. And if justice is not had in the courts, it will eventually be had in the streets as civil society breaks down. Look around and you will see civil society breaking down. Hundreds of thousands more fentanyl overdose deaths occurred in the last three years due to an open border that should have been addressed by the courts. Cowardice, fear, or ambivalence causes the courts to abuse the abstract language of "standing doctrine." In the present case, the plaintiff's right to redress was abused by the District Court's dismissal and the right to go to law school was abused by the defendants. The plaintiff is getting abused by all branches of government as the legislative branch has abdicated its authority to the executive branch during the covid era.

On the other scale is a made-up doctrine that is not stated in the Constitution at all. There is no mention of "standing." And if one were to

trace back the ideology of "standing doctrine," it would be found that nothing existed to the extent of *Lujan*, let alone *Iqbal*. On this scale against the plaintiff in the present case sits a 5-4 decision and the words, "plausible on its face," that deprives the plaintiff of his most foundational right as defined in the U.S. Constitution.

While the plaintiff understands how the system degraded into inefficiency and behavior of lethargy and fear as custom and practice to violate citizens' rights, he is nonetheless disappointed that the United States appears to be in its waning days while the Supreme Court plays word games in the pretense of understanding foundational natural law and individual liberty at the core of our Founders' words derived from John Locke and Baron de Montesquieu by way of Santo Tommaso D'Aquino.

In the present case, the pristine and crystal First Amendment was shattered against the gutter of "standing doctrine" derived from a 5-4 decision due not to Article III § 2, but rather due to scope creep of abstract prose in a decision likely never meant to be the thief of natural rights.

The plaintiff's First Amendment right to be heard by the court must be remedied.

## IV.    Chancery

The courts have lost their way. This case is 100% in equity, yet it seems that the system forgets what that means. This case could have been heard a year ago and lives would have been saved.

A chancellor, or judge sitting in equity, has the power to go beyond law, as long as his ruling does not conflict with law. This allows controversies to be settled in situations where there is no remedy at law. This case is just such a situation. However, the system failed.

*Stare decisis*, collateral estoppel, and *res judicata* are inappropriate to rely upon in cases of equity such as the present case. Dynamic situations of life or death for The People require quick decisions and those decisions rely upon a set of facts in an instant in time.

This court of equity must realize its awesome responsibility and not shrink in cowardice from it. When the covid "vaccine" was introduced, it is understandable that courts would be tricked into thinking it was an actual vaccine and not what it really is, which is a failed gene therapy drug and delivery system. It is failed because the manufacturers never could make it safe, let alone effective. The lipid nanoparticle (LNP) delivery system can never be safe for an acceptable proportion. Too many people react badly to it. And the manufacturing process contamination is too dangerous as it likely causes turbo cancers. These statements could not have been known by judges or made by more than a handful of plaintiffs in early 2021. Thus, a

case brought in equity to a judge sitting in equity would understandably fail to stop the "vaccines" back in early 2021.

However, as time goes on, more information is known. No case should be precluded from being brought on *stare decisis* due to such changes. By definition, due to changes in information over time, that later case cannot be the same case or controversy as the earlier one. Such dynamic situations require that a case be heard each time. The differences between cases in equity and cases at law must be recognized.

In the present case, given that it is fully in equity, it should have been heard more than a year ago as there is enough hard evidence from the state's own official records to show massive death and maim to The People of Massachusetts.

In consideration of the high stakes of life and injury to The People, the plaintiff should have had his injury heard and The People should have had access to the TRUTH that the plaintiff uncovered through his investigations.

## CONCLUSION

The First Amendment should not be subjugated by a 5-4 decision filled with abstract prose used by lethargic and fearful judges to flick unwanted cases out of courts.

The plaintiff surely did plead enough facts to gain standing. He demonstrated an injury in fact in that he was deprived of the right to enter

law school. He demonstrated an express written traceability from law schools injuring him to those law schools pointing to the fraudulent data put out by the defendants. And it should be obvious to any reasonable person that if law schools knew that covid gene therapy drugs maim and kill people in the hundreds of thousands in the United States, while covid *per se* deaths were over-counted by nearly 10X, then they would summarily cancel all mandates, thus redressing the plaintiff's injury.

 The complaint is not only plausible on its face, it has been presented to a million viewers and thousands of doctors and scientists, yet to date, no one has been able to refute the factual and official data therein.

The plaintiff understand the tone of this brief and is clearing not trying to win friends on the court. The expectation of the plaintiff is always the same. Do what is right and just. For the plaintiff as well as The People, this case must be heard.


February 15, 2024


/s/ John Paul Beaudoin, Sr.
John Paul Beaudoin, Sr.
*Pro se* Appellant
17 Fairview Road
Medfield, MA 02052
508-277-7276
johnbeaudoinsr@gmail.com

## ADDENDUM

No addendum items at this time.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon counsel for the defendants by e-mail at:

Grace Gohlke
Assistant Attorney General

grace.gohlke@mass.gov

on this 15th day of February 2024.

/s/ John Paul Beaudoin,Sr.
John Paul Beaudoin, Sr.
*Pro se* Appellant
17 Fairview Road
Medfield, MA 02052
508-277-7276
johnbeaudoinsr@gmail.com